Good morning, and may it please the Court. Jason Cerf, Federal Defenders of San Diego, on behalf of Mr. Wolling. Counsel. Your Honors, this is nothing short of an interesting case with a great deal of issues currently before the Court. The Court is aware Mr. Wolling was charged and convicted of alien smuggling, bringing two undocumented individuals into the United States from Mexico. At trial, Mr. Wolling presented a diminished capacity defense and argued that he suffered from a mental illness, namely a delusional disorder along with schizoaffective disorder, and that because of that disorder, he would have been incapable of forming the specific intent to violate the law. That was the defense in the case. The Court acknowledged that as the defense. The defense continually argued that throughout the course of trial. In pretrial proceedings as well, it was endorsed by the Court. The argument, and in support of that argument, the defense proffered quite a bit of evidence and marshaled quite a bit of materials that it intended to present to the jury. In addition to the defense expert, Bruce Yanovsky, who took the stand and testified. What was your argument below as to why you wanted to, well in your reply brief, you did not address the government's argument, the testimony you sought to offer of Dr. Yanovsky that Wolling was guided by his delusions on the date of his arrest, but to his volition and not to his specific intent. You know, what did you argue below and what are you arguing here? It seems to me that you've changed up. I argued below that those statements didn't compel any necessary conclusion by the jury that he lacked specific intent. The District Court believed that statement by the expert would have infringed upon the permissible bounds of his testimony under 703, wherein he can't state or give an ultimate opinion on the ultimate issue. And that's what the court believed that statement would have done. I argued below and I argued on appeal in my opening brief. And I set out all the reasons why I didn't think the District Court was right in my opening brief and I didn't respond because there were a variety of issues and I believe that I addressed everything as well as I needed to in my opening brief. But that statement, I don't think, compelled any conclusion from the jurors with regard to the intent element in this case, the specific intent element. It was just another way of saying to the jury that Mr. Wolling suffered from a delusional disorder on the day of his arrest. There's really no distinction. It's also not as... Well, it seems to... I'm sorry, go ahead. Well, it seems to me that in your arguments, we need to know what exactly went before the jury because there were things, you know, I think an argument can be made that the doctor exceeded what the parameters that the judge had ruled he could testify to. And so really a lot of what you're arguing about actually came in. The doctor was looking at medical records, was testifying from them, you know, as a basis, and the doctor even said something, said, you know, his statements about God and that he couldn't have, you know, he couldn't have, you know, the medical records were that came in. It seems that Dr. Junofsky testified that Wolling suffered from a delusional disorder and responded yes to the question, was Mr. Wolling suffering from a delusional disorder on the day of the arrest? And I think he answered that. And he was, he actually says the statement about, Junofsky testified that Mr. Wolling talked about being under the law of God and would not obey the laws of the land and he had given his life to God. He also testified that all of his actions are guided by this principle. And it seems to me that a lot of the things that you're saying didn't go before the jury, got what didn't come through the front door, came through the back door. Well, I don't think necessarily that statement came in through those other statements. Suffering from a delusional disorder, I think, is a little less specific than stating he was guided by the delusions that day. I think it's a symptomatic, it's an expression of the symptomology that existed on the day of arrest, which is something that's permissible under 703 to come in. The doctor can testify as to the symptoms that he observed that give rise to his opinion. This wasn't a statement that he said, look, he was guided by his delusional disorder at the very moment he entered the United States driving that car and couldn't form the intent. This is a much more generalized statement. And I think that was the problem the district court had. It viewed it as a very specific statement as opposed to a more generalized one. It talked about being guided. It didn't say compelled. It was merely a symptom that was consistent with all the prior history that Mr. Walling had, that his delusional world, the delusional disorder that he had, was dictated by these parameters set forth to him, he believed, by God. So I think while the court may have an argument that Mr. Janoski testified, and I believe that Mr. Walling was actually guided by, quote unquote, his delusion on the date of the arrest. It seemed to me that you got everything out of that witness that you really needed to get. No? I didn't get everything out of that witness. One thing that did come out, and the court is right, he did discuss the contents of the reports for patent. I think this is the biggest issue in this case and probably the most important one at this point. He discussed the contents of those patent records. However, the problem is at the end of this trial when the jury sent the note to the district court requesting that it be able to see these records from patent as well as the federal jail, the district court provided a response that I think cut the legs out from the testimony of Dr. Janoski. It told the jury, look, those aren't available to you. You can't have them. And it told them they weren't admitted into evidence. And you can't consider what isn't admitted into evidence. That's what it told the jury in its instructions. While Dr. Janoski may have been able to testify to the contents of the reports, which were admissible because of the stipulation between the parties under 902.11 and 803.6, the contents of the patent records and the federal jail records were admissible, at least all of the contents with regard to the doctor's observations, analyses, and diagnoses. Those were admissible pieces of evidence. But when the district court tells the jury they're not available to you and then you combine that with the other jury instructions which this court presumes the jury will follow correctly, now I don't have that testimony from Dr. Janoski. Well, the trump on that was that no, you can't, you know, you get to hear the testimony, but no, you don't get to look at the records. And the trump was four of three in terms of the court decided that it was going to be too time confusing and too time consuming and confusing to introduce all of that. So things can be admissible, but that doesn't mean that, you know, I think you can be admissible under a business records exception, you know, or you had a stipulation. But I think 403 can trump things. But the trouble is it wasn't 403 as the basis for the court's exclusion of the documents. In the excerpt of record at 105 to 106, the court undertakes what's essentially a 703 analysis. And the reason this is significant is under 703, there is analysis that has to be performed by a court to determine whether underlying facts that are inadmissible, such as hearsay statements, because they're more probative than prejudicial and will assist or aid the trier of fact in considering the expert's testimony. That's the analysis that was done by the court. It's an implicit 403 analysis. But what's important about that discussion by the court is it clearly viewed those documents and the contents as not being admissible or it wouldn't have any need to discuss it under 703. 703 deals with inadmissible evidence and when it should be allowed in. And that's when it's more probative than prejudicial. But the court should not have even gone to 703. The court should have said, pursuant to the party's stipulation, that these documents are authentic and that the contents come in under the business records exception. He has to make a determination, and this court discussed this in Blaylock, of relevancy, and then 403. But not under 703. Well, I think what you would have to convince me of, I know what you got in. Convince me somewhere that what you didn't get in would somehow have, you know, how that affected the jury here. I mean, you got to defend the case. Well, those documents were absolutely pertinent to the defense. Precluding their admission essentially precluded Mr. Woynk from presenting an adequate defense. And under the analysis in Blaylock, I'll discuss the relevancy. And I have a laundry list here. First, and I want to point this out, the excerpt of record at page 35, the district court discusses what is admissible. And it specifically says that the background information, including the evidence provided by Dr. Yunofsky, are admissible, or at least they're important information he can discuss it. And he says that it will also aid and assist the trier of fact. So right away, even before trial begins, the district court's explaining that the contents of these reports are important and relevant background pieces of information that will assist the jury. In addition, under Blaylock, it's clear that this would have supported the theory of defense and corroborated the arguments by Mr. Woynk. We have two competing arguments. We have Mr. Woynk's argument, through me, that he couldn't have formed a specific attempt because of the mental illness. And we have the government's argument that, well, wait a second. On the day of his arrest, he was lucid and clear and wasn't exhibiting any signs of strange behavior or odd symptoms. So he's got to be lying. So we have two competing stories here. And clearly, the documents under Blaylock were relevant because they would have supported Mr. Woynk's explanation of events. In addition, it would have rebutted quite a few arguments made by the government in this case. The government argued in closing that Dr. Yanofsky's opinion was clouded and it was biased because he was a paid defense witness. Well, this certainly would have countered that argument and corroborated Dr. Yanofsky's testimony because he has written a report and rendered an opinion, one, that's based on sound observations and judgments by other doctors, much closer in time to the events of the case. And two, it would have showed that these are state doctors and the state doctors at Patton were ordered by the state court to do the exams. And the federal jail, obviously federal employees, the doctor there did the exam, unbiased individuals who rendered very similar conclusions, made similar observations, and rendered identical diagnoses. So it would have rebutted that argument and corroborated the testimony by the doctor. It would have also rebutted the claim that the only thing he can rely on here is Mr. Woynk's statements. Well, that's not true because we have all this other evidence, such as the doctor's seven-month period of time at Patton, which is very significant. Within three months of his arrest, he's released. So what did you actually get in in the oral testimony about Patton in those reports? Some of the symptoms and then the diagnoses by the doctors. And what, and those were other doctors, right? Right. And the jury knew that? But the jury was told, the jury wanted that evidence. By not giving it to them and giving them this videotaped confession to now watch, it readily, and I argued this, emphasized the videotape. And on the videotape, and this is the other, there are a lot of other reasons why it's relevant, the government argued and all its witnesses testified, look, he wasn't exhibiting any bizarre signs of behavior. And I guess they were falling back on this. He's not bouncing off the walls. He doesn't belong in a rubber room. Those reports would have explained that that's not symptomatic of someone with a delusional disorder. He wasn't someone who had these outward expressions of mania or did things that were crazy. And that's why they were also relevant, because the government argued, and this is a big key to its case, it claimed, was that, look, he's not making any strange, not exhibiting any strange signs. And it drew all this lay opinion testimony from its witnesses, beginning with the primary inspector, through the secondary inspector, through the interrogating agents, that Mr. Walling wasn't acting strangely. And then it relied on the videotape. So look at the videotape. He wasn't acting strangely. He wasn't bouncing out of his chair. He wasn't screaming or yelling or doing anything. As a matter of fact, they argued that he was being... Did Dr. Iannoski say that he reviewed the videotape as part of the conclusions that he formed in his testimony? Yes. All right. So he testified about that. Correct. But the jury wanted those reports as well. And they're relevant to rebut all of these things. The videotape didn't rebut any of these things, the government argued. The government argued he was being evasive. The doctor could have said, look, he wasn't being evasive when he was being interrogated by referring to God and religion, because that's part of his delusional disorder. All these doctors at Patton and at the federal jail discussed how he always route discussions, conversations, or talk to religion and to God, and that he wasn't doing it to be smart and to be evasive and not to have to answer the agent's interrogation questions. That's what the government argued. And clearly all these documents would have backed it up and corroborated the defense and shown that this was true. Especially when you couple it with the fact that the judge tells the jury, look, it's just background information. You can't consider it for the truth. And it specifically said it was inadmissible as substantive evidence. Several times. What precisely were these records that we're talking about? These records start at page 197 in the- Yeah, but describe them. What- They are psychiatric evaluation records from the Department of Mental Health at Patton State Hospital. Patton State Hospital, obviously, is a psychiatric hospital at the disposal of state courts. And in Mr. Walling's case, a state court judge sent him there for a competency evaluation where he was deemed incompetent, but restored to competency and then returned to state court. Over a period of, I think, eight or ten months, there were five or six reports generated that went through symptomology, his background and history, and observations made during the course of stay at Patton. And then the doctors at the end of the report would render a diagnosis. They were very simple and straightforward reports. They weren't complicated. Dr. Yanofsky testified as to the meaning of some of the words. And he read from them. He read from them to the jury, right? Correct. But again, the district court waited until the jury. You can't consider that for the truth. So whether he read it or not, the jury is now told you can't consider it for the truth. It's inadmissible. And that was wrong. Now, these weren't statements made by the patient to the witness. Now, those were another issue. Those could have been redacted from those reports. There were plenty of statements by the doctors regarding their observations, opinions, and conclusions. Those were generated by the doctors themselves. They're not any statements from Mr. Wolling. And I had an alternative theory for admission under 8038, under a Supreme Court case called Beach Aircraft, where these essentially are public records. Because when you're at Patton, it was pursuant to the court order, and the court ordered Patton to hospitalize him, examine him, and prepare reports. So these essentially are public records being prepared by somebody now with an obligation or duty to do this. Same thing with the records at the jail in San Diego. So obviously the primary basis for admission was the 90211 stipulation, but I think the alternative also could have been a public record exception. So I'm sorry, go ahead. Sorry, go ahead. Finish your... It's okay, I'll... This whole thing is resolved by deciding whether or not these records are admissible. This whole business about the jury instruction is either right or wrong, depending upon whether these records were admissible. True? If they're not admissible, this instruction was correct. If they are admissible, then the game's over. So it turns on admissibility. The issue about jury instruction is going to be decided once admissibility is decided. Correct. I think that there's a subtle distinction between the two arguments, and I guess I didn't flesh it out carefully enough. The issue really with the jury instruction more than the admissibility of the records was the impact it had on the ability to present the defense. But I think Your Honor is correct in noting that, look, if these documents aren't admissible, then the court's instruction was correct. In your theory of this case, keeping these documents out of evidence and keeping them away from a jury couldn't be cured by any instruction. If they were admissible, no. No. And if they are admissible, there's no need for any instruction. Correct. Now, and then on this issue of what the doctor was permitted to testify to, are we not limited to simply the difference between, in your opinion, was Mr. Wolling suffering from the delusional disorder? Yes. And the jury heard that, right? Correct. All the court excluded was a question that would have gone, in your opinion, was Mr. Wolling guided by the delusional disorder on the day of the arrest? Isn't that the only difference we're talking about? Isn't that all you didn't get to do is use the word guided? I think it was just a symptomatic expression by the doctor. I'm talking about the word guided. Guided is all we're talking about. I see it as a significant difference. But that's all we're talking about, is it not? The use of the word guided. If you had been permitted to ask the question, in your opinion, was Mr. Wolling guided by that delusional disorder on the day of his arrest, there's no issue here. I see it as different. What would be the issue if you had been permitted to ask that question? Then what would you be complaining about on appeal? I'd still be complaining about the inadmissibility, according to the district court, of all the patent and the jail records. I know that, but I'm talking about this issue on what the doctor was permitted to testify to. Then I probably wouldn't have an argument, because if it were admissible... You're not following me. I'm sorry. You got to ask the doctor everything you wanted to ask the doctor, did you not? Except, in your opinion, was Wolling guided by the delusional disorder on the day of his arrest? There were some other questions that the district court precluded me from asking. What were they? They were discussing a prior arrest leading to the hospitalization at Patton. He said that was inadmissible, so I wouldn't be permitted to get into any of that with the doctor and discuss that. Do you refer to that in your brief? I talk about that, yes. Okay. What else? It was statements about also the instinct case. I recall him actually precluding me from asking the doctor as well. He said I wouldn't be allowed to inquire of any statements by Mr. Wolling to him regarding any events taking place in this case more specific than what he testified to. One of the bases for his claim of that was that the government wouldn't have a right of cross-examination. But primarily, even though you didn't get to ask the exact question that you wanted, it seems to me that Dr. Unosky testified that across the board, people in the end have concluded that his delusion is based on his preoccupation with God, unquote, and, quote, all of his actions are guided by this principle, unquote. So you just didn't get to say that he was guided by this on that date? Correct. Okay. But Dr. Unosky, I'm not misquoting him, right? To my best recollection, no. Okay. You're down to less than a minute. You may reserve or consume either way. I'll reserve. Thank you, Your Honor. We'll hear from the government. Good morning. May it please the Court, my name is Larry Spong representing the United What was excluded and what was not. This was an extremely narrow exclusion when this case started. On page, I think it's 138 of the Excellence of Record, what the court excluded were two different things, both statements by the defendant as to why he committed this offense and as to why he committed an earlier theft offense. As far as the records go, any and every question, counsel was allowed to ask. I think it goes for about 18 or 20 pages, all the questions he asked about the patent records. He got to ask anything and pretty much everything he wanted. And as far as the expert testimony, which frankly, the government believes is irrelevant in the first place. We shouldn't really even be talking about this because this all went to volition. When you're guided by somebody, somebody is, that's volitional. And the way to make this clear is to say, well, what if he had said the smugglers were guiding me to do this or forced me to do this? It would make it clear this is a volitional. That's an excuse or a justification. It might be duress, it might be something else, but it doesn't negate specific intent. God can tell me to do something, but I will still intend to do that thing. In fact, Mr. Wolling's own statements, I follow the law of God, not the law of man, shows very clearly he's able to form the intent. So from the get-go, this is all irrelevant. But assuming it's relevant at all, then the only thing we're talking about here are self-serving statements as to why he committed the crime. That's all. That's the end of it. That's the only thing he wasn't able to talk about. The anything and everything else was fair game, and he did in fact talk about it. Now it finally comes to the point where they want to actually see these records. But the harm here, there isn't any harm because they've heard it all. And then finally, let's assume, again, that it is irrelevant, and that it might have been error, or assuming it was error. That he should have been able to answer those two questions, and that should have come in. It is clearly harmless. Why? The jury heard this, they made a common sense judgment. What we have is a person who came to the port of entry, knew people were hidden, admitted that he knew he received $600. The material witness testified she heard him negotiate for the $600. He knew the other prices that had been charged for smuggling. When the jury looked at that behavior and all of this, they just simply said, look, it doesn't make any sense. And really, that's the bottom line here. Okay, but with respect to the mental incapacity of defense, which was offered, the jury specifically sent a note asking for these records. What's your response on that? Well, two things. Number one, it's irrelevant. It didn't go to specific intent. And it doesn't matter how many times they say it, even the defense jury, the theory of defense jury instruction that the court agreed to give said he was guided by that. That's volition. Now, is Dr. Janofsky sitting there looking at the records? He's got the records in front of him. They can ask anything they want. Okay. Now, if counsel hadn't made an objection, I mean, a common thing that happens in juries, people use charts or they have props with them or they're looking at things. Well, the jury always wants to see them later. If they're not marked and received into evidence, they're out of luck. That would be easy. But here we do have this whole process that occurs earlier where they do, in fact, they try to introduce these as being admissible and it's objected to. So it really goes like what Judge Levy is saying from the standpoint. The answer of no is fine if they're not admissible, if they're properly not admissible. If they should have been admitted, then the answer is wrong. Well, not if the court can still do, and I think what it did was a sort of 403 analysis here and say, well, look, yes. Well, 403 is part of admissibility, right? I mean, if there's first something could be admissible as a business record, but then I think that 403 can trump otherwise admissible evidence. Correct. And I really think that's what the judge was doing here just at a later stage, saying, look, I let this come in. It came in, but I'm not going to let it come in where they just get to willy-nilly go through and read all this stuff. The defense was allowed to do it. But even if we concede, even if the government were to concede that, the main argument is still, and for the government has always been, all of this was irrelevant. And he got to put pretty much all of it in. And the jury considered it and rejected it in the face of very clear, concrete evidence. And I think that is where it should go. And I think it's important that when the government, when the Congress passed the insanity defense law after the Hinckley matter, it specifically rejected this volitional type evidence and said it doesn't come in. And it certainly doesn't come in to negate specific intent. The nature to negate specific intent has to be that they didn't do the crime, not that I have an excuse for justification. Any other questions? Well, all of this, none of this was presented under any plea other than the plea of not guilty. Am I right? I'm not quite sure. There was no notice of a defense, or was there? Oh, yeah. What happened, first, the defense tried to qualify Dr. Zilberman, the government psychiatrist, to testify as to this. And Dr. Zilberman basically said, look, I really can't testify that he was suffering under this delusion. So then the defense was allowed to go out and get its own expert. But what I mean is it was all under a plea of not guilty. Absolutely. No other plea other than the plea of not guilty. Absolutely. And so all we're talking about is the capacity to form the intent to commit this crime. Yes, that's the issue. We're not talking about the affirmative defense of mental illness. Oh, no. No, no, no. Now, are you going to concede here that it was error to exclude these records? Well, if these records were not, aside from the issue of relevance, if these records were not admissible in this case, what records would be? I mean, we get this kind of evidence in so many cases. And here we have a stipulation of authenticity. Yes. These are authentic records of an institution that had this man on one occasion for examination and on another occasion for actual treatment. Right? Yes. And the court said these are inadmissible. Now, why? Why is any record admissible of any hospitalization if these are not? Or at least the one where he was being treated. I think what the court said was that under the expert rules, the expert can rely on this sort of evidence in its opinion. But that's in order to form the basis of opinion. It's not for their truth. And it's on that respect that the district court. That's a separate issue. The admissibility of these records even without an expert. Why not? To show his condition and what he was being treated for, what the diagnosis was. Why not? Well, in terms of the statements of the defendant saying why he did it, why not, is because they're self-serving hearsay. Okay. So that would have to be extricated. All right. All right. And other than that, I think they would come in if it were, in fact, relevant to the intent. So your main argument right here is they're irrelevant? They're number one, they're irrelevant. And secondly, you're arguing harmless error. Yes. But if they're relevant, and unless we find they're harmless error, this case has got to be reversed, right? No, I disagree. Okay. Go ahead. Okay. It doesn't have to be reversed because, well, I guess it is harm. I guess the argument is basically harmlessness. Yes. When you look at the entire evidence, it's harm. The evidence of his guilt was overwhelming. Well, how does 403 fit into the – let's say that I agree that, you know, under some – well, I can't even say it now. If you authenticate the records, some authentication, or under a business record, that it is admissible. But then how does 403 fit into how the court decides to structure how the evidence is going to come in? Right. I think what – I mean, the court here did say it was offered for the truth, and that's why he wasn't doing it. But some of the discussion seems to say that, look, these records, when they're looked at separate – we do, in fact, have expert testimony. And he based his opinion on that. If we give these then undue weight by giving them to the jury to make a lay assessment as opposed to relying on the expert, that's prejudicial. And it's in that sense I think it's prejudicial. Because the records did, in fact, come in as the basis of the expert's opinion. And so now to give the actual records to the jury to now form its own lay opinion based on the records themselves, without linking it to the testimony of the expert, I think is where the prejudice would lie. And I think that would be a separate basis upon which to uphold. Yeah, but you don't reach that until you decide it's admissible and relevant. Right? Absolutely. Okay. Thank you, Counsel. Thank you. Mr. Serra, you have about a minute. I'll give you a full minute today. That's where my fast-talking Brooklyn roots come in, I guess. Really briefly, I wanted to point out that the government actually conceded this. On page 133 of the excerpt, the district court specifically says that they're not admissible for the truth. So while the 403 analysis might have been done, it's done under the guise of a 703 analysis, because the court didn't think that the stipulation to authenticity and the hearsay exception brought the records into evidence. And the court is right. I moved for admission of the records multiple times long before we ever got to the jury note. The excerpt of the record shows that page 44, 139 to 145, 188 to 189, I guess, is where the jury note comes in. But there were requests made by me to have these moved into evidence. And the court's right. I didn't need an expert to even testify. Blaylock makes that apparent. In Blaylock, there was no expert. The records were simply brought in to show that the defendant had suffered from a back injury and couldn't have fled from the police like claimed. So there was a one-story versus another-story situation, which is very similar to what we have here. There's competing stories based on testimony by government agents who were lay witnesses, not doctors, not experts, were never qualified as such. So for the government to say this is harmless, I would disagree. The jury was out one full day deliberating. The court's right. They requested these records. They clearly wanted to see them. They were interested in them. While the agents may have testified, clearly their lay opinion testimony is not as strong in my opinion or persuasive as an expert would have been. And in addition, these records were presented and created by non-biased actors unrelated to the defense, which is what I think is very important to consider here. These are individuals who work for the state and work for the executive branch of government. This is part of my questioning. The doctors at the jail were not part of the defense. So I don't think this was harmless by any means. All right. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted for decision. The court will adjourn.
judges: O'scannlain, Leavy, Callahan